WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-24-07135-001-TUC-JGZ (MSA) |
| Plaintiff, | **ORDER** |
| v. | |
| Cesar Blanco-Melgoza, | |
| Defendant. | |

Pending before the Court is a Report and Recommendation (R&R) (Doc. 41) issued by United States Magistrate Judge Maria Aguilera recommending the Court deny Defendant's Motion to Dismiss the Indictment Under 8 U.S.C. § 1326(d) (Doc. 22). Defendant filed an Objection to the R&R (Doc. 46), and the Government filed a Response (Doc. 49).[1] For the following reasons, the Court will overrule Defendant's Objection, accept the Magistrate Judge's recommendation, and deny Defendant's Motion to Dismiss.

## I.      STANDARD OF REVIEW

When reviewing a magistrate judge's R&R, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis in

---

[1] Defendant also filed a reply. (Doc. 50.) Although the R&R prohibited replies on objections without the district court's permission, (Doc. 41 at 6), in its discretion, the Court will accept the reply. The Court refers to the reply brief because it clarifies Defendant's arguments.

original). District courts are not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

## II.    FACTUAL AND PROCEDURAL HISTORY

The R&R provides the following background on the case:

> Defendant, a Mexican citizen, was admitted into the country as a lawful permanent resident in 1993. (Doc. 22-1 at 2.) In 2000, he was convicted of possession of cocaine in violation of California law. (Doc. 22-2 at 3.) Immigration officials served him with a notice to appear in removal proceedings, alleging that he was deportable for having committed a controlled substance offense. (*Id.*) At a removal hearing on March 8, 2001, an immigration judge ordered that he be deported to Mexico. (Doc. 22-3 at 2.) The record does not include a transcript or recording of that hearing, but it shows that Defendant attended and that he was deported a few days later. (Doc. 22-3 at 2; Doc. 25-4 at 4.) Defendant did not appeal the immigration judge's order before his removal. (Doc. 22-3 at 2.)
>
> Defendant has been deported from the United States several times since then, each time based on the 2001 order of removal. (Doc. 25-4 at 4.) He was apprehended in Arizona in 2024 and indicted for illegal reentry in violation of 8 U.S.C. § 1326. (Docs. 1, 8.) He filed a motion to dismiss, arguing that the 2001 order of removal is constitutionally defective and thus cannot serve as a predicate for his charge. (Doc. 22.)

 (Doc. 41 at 1–2.)

After the parties fully briefed Defendant's Motion to Dismiss, Judge Aguilera set oral argument and provided a preliminary analysis to focus the parties' arguments. (Doc. 32.) Oral argument took place on September 9, 2025. (Docs. 34, 36.) Judge Aguilera determined the Motion, supported by the absence of a contemporaneous record and Defendant's declaration only, raised a factual dispute warranting an evidentiary hearing. (Doc. 41 at 3 (citing Doc. 22-4 ¶ 16).) Defendant declined the invitation to testify at the hearing, invoking his Fifth Amendment privilege against self-incrimination. (Doc. 40.) The Court did not hold an evidentiary hearing, and Judge Aguilera issued the R&R on October 23, 2025. (Doc. 41.) Judge Aguilera recommended this Court deny the Motion because Defendant had "not presented any competent evidence that something improper occurred at his removal hearing." (*Id.* at 2.)

After reviewing the R&R, the Court determined additional evidence and argument would aid its decision. (Doc. 51.) The Court held a status conference, and the parties agreed

to an evidentiary hearing at which Defendant would testify and be subject to cross-examination. (Doc. 54.) The Court held the evidentiary hearing on February 11, 2026. (Doc. 60.) Defendant was the only testifying witness. The remaining evidence consisted of the documents the parties submitted as exhibits to their briefing on the Motion. (Doc. 61.)

**A. Evidence**

"There is no transcript of Defendant's removal hearing, and the audio recording is inaudible." (Doc. 32 at 1.) Thus, the evidence of what transpired on and around Defendant's 2001 removal proceedings is limited to Defendant's memory, the memory of witnesses to the proceedings, and the contents of Defendant's A-file.

Defendant's Motion includes four attachments, all admitted as exhibits at the evidentiary hearing: (1) Defendant's Immigrant Visa and Alien Registration Form 155A (Doc. 22-1); (2) a Notice to Appear ("NTA") in removal proceedings, dated December 7, 2000 (Doc. 22-2); (3) the Removal Order, dated March 8, 2001 (Doc. 22-3); and (4) Defendant's Declaration, dated June 10, 2025 (Doc. 22-4). On the Removal Order, the Immigration Judge ("IJ") indicated Defendant waived his right to appeal by circling the word "Waived" and crossing out the deadline to appeal. (Doc. 22-3 at 2.) Court staff signed the order, certifying it was personally served on Defendant the same day. (*Id.* at 3.)

In his Declaration, Defendant attested that he did not have a lawyer and appeared pro se at the 2001 removal hearing. (Doc. 22-4, ¶ 8.) Defendant stated he "do[es] not recall": (a) whether the IJ told him he could hire a lawyer; (b) whether the IJ asked if he wanted more time to look for and obtain a lawyer; (c) if he was informed of his rights to present evidence and challenge the government's evidence; or (d) seeing a Notice to Appear or an explanation of its contents in Spanish. (*Id.* ¶¶ 9, 11–13.) Defendant stated he "do[es] not remember the immigration court or anyone else providing [him] with an explanation about [his] right to appeal the removal order or hire counsel to help [him] in that endeavor." (*Id.* ¶ 16.) Defendant affirmatively stated: (a) he "was never provided a list of free legal service providers"; (b) the IJ "did not explain to [him] that [he] had any possibility of applying for cancellation of removal for permanent residents [sic]"; (c) he

"was [not] offered nor given a cancellation of removal application"; (d) he "was deported to Mexico . . . without any documents or other paperwork"; and (e) he "was not given any forms to appeal [his] deportation." (*Id.* ¶¶ 10, 14–16.)

The Government's Response also includes four attachments which were admitted as exhibits at the evidentiary hearing. The first is the NTA, including an additional page signed by Defendant, indicating an immigration officer served the NTA on Defendant in person on February 7, 2001. (Doc. 25-1.) Two boxes are checked indicating that a list of providers of free legal services was given to Defendant, and Defendant was provided oral notice in Spanish of the time and place of his hearing and the consequences of failing to appear. (*Id.* at 2.) The NTA explains the respondent's right to counsel and right to present evidence and challenge the Government's evidence. (*Id.*) The NTA states the IJ will advise respondents "of any relief from removal for which [they] may appear eligible," and respondents "will be given a reasonable opportunity to make any such application to the [IJ]." (*Id.*)

The second attachment contains two copies of a Notice of Rights form, with a section entitled "Notice of Availability of Legal Services." (Doc. 25-2.) The form is in Spanish, signed by Defendant, and has a box checked indicating an immigration officer read the Notice to Defendant in Spanish. (*Id.* at 1, 4.) The form includes a list of free and low-cost legal service providers. (*Id.* at 2–3, 5–6.)

The third attachment is a Record of Action ("ROA") of the removal proceedings on March 8, 2001. (Doc. 25-3.) The ROA consists of handwritten notes by the government attorney at the removal hearing. (Doc. 25 at 6.) On the form, the attorney placed a checkmark indicating Defendant waived his appeal rights and wrote "No appeals," "Waives atty," "admits conviction," and "R admits prior convicts," noting two potential criminal convictions in 1995. (Doc. 25-3.)

The fourth attachment is a plea agreement from September 2007 in which Defendant pleaded guilty to an illegal re-entry charge in the Central District of California. (Doc. 25-4.) Defendant stipulated to the fact that he "was lawfully removed from the United States

on or about March 10, 2001." (*Id.* at 4.)

At the evidentiary hearing, Defendant testified as to his memory of the removal proceedings and the statements made in his declaration. (*See* Doc. 65.)

### III. DISCUSSION

#### A. Legal Standard – Collateral Challenges Under 8 U.S.C. § 1326

A defendant charged with illegal reentry under 8 U.S.C. § 1326 may bring a collateral challenge to the underlying removal order only "if the defendant demonstrates that (1) 'the alien exhausted any administrative remedies that may have been available' to contest the order; (2) the underlying removal proceedings 'improperly deprived the alien of the opportunity for judicial review'; and (3) 'the entry of the order was fundamentally unfair.'" *United States v. Valdivias-Soto*, 112 F.4th 713, 721–22 (9th Cir. 2024) (quoting 8 U.S.C. § 1326(d)). Each prong is mandatory. *United States v. Palomar-Santiago*, 593 U.S. 321, 329 (2021). However, a single consequential due process violation may satisfy all three. *See Valdivias-Soto*, 112 F.4th at 773 n.16. "If the defendant satisfies all three prongs, the challenged removal order may not be used to establish any element of an illegal reentry offense." *Id.* at 722. A defendant's collateral attack fails if he validly waives his right to appeal the underlying deportation order.[2] *United States v. Gomez*, 757 F.3d 885, 893 (9th Cir. 2014) (citations omitted).

#### B. Recommendation & Objections

The Magistrate Judge recommended this Court deny Defendant's Motion because, without an evidentiary hearing, "there is no competent evidence that Defendant's rights were violated at his removal hearing. . . . and there is a clear path to the Court's conclusion that Defendant has not met his burden under § 1326(d)." (Doc. 41 at 4.) The Magistrate Judge found Defendant's declaration was inadmissible hearsay, and even if she considered it, she would give it no weight because: (1) Defendant recalls very little of what happened at the removal hearing; (2) multiple statements in the declaration are contradicted by

---

[2] The attack fails where a noncitizen validly waived their right to appeal both because the Government cannot have improperly deprived the noncitizen of judicial review, and because a noncitizen, who did not appeal to the BIA, cannot have exhausted their administrative remedies.

records in the A-file; and (3) his uncontradicted affirmative assertions were not subject to cross-examination and the Magistrate Judge had not been able to assess Defendant's demeanor. (*Id.* at 4–5.)

Defendant objected on the ground that the Magistrate Judge committed legal error in failing to consider his declaration and to account for his allegations of multiple violations at the removal hearing. (Doc. 50 at 3.) Specifically, Defendant argues this Court should consider, and credit, the declaration because: (1) the Government did not object to its admission into evidence and even conceded its validity at the motion hearing;[3] (2) an individual, who was unrepresented in removal proceedings, needs only to contest the validity of the prior removal with *alleged* facts when bringing a collateral attack under § 1326(d); and (3) the Magistrate Judge failed to consider that Defendant's declaration is supported by the record of the underlying removal proceeding because the record does not contradict most of Defendant's allegations. (Doc. 46 at 9; Doc. 50 at 2–3.)[4]

### C.   Defendant's Testimony

As the Magistrate Judge explained, Defendant's declaration suffers from several problems:

> [Defendant] admits that he recalls very little of what occurred at his removal hearing. (Doc. 22-4, ¶¶ 9, 11–13, 16.) Notably, while he is not sure whether he was served with a Notice to Appear, his A-file includes a Notice to Appear bearing his signature. (Doc. 25-1.) And while he says that he does recall that he was never provided a list of free and low-cost legal services, his A-file includes a Spanish-language Notice of Rights bearing his signature, and the Notice is accompanied by a list of free and low-cost legal services. (Doc. 25-2.)

(Doc. 41 at 5.) Thus, the evidentiary hearing was an opportunity for Defendant to establish his credibility and clarify the allegations of defects in his removal proceedings. Defendant failed to do so.

Defendant's testimony also calls his credibility and memory of the removal

---

[3]   The parties' arguments and the Magistrate Judge's decision about the declaration's admissibility are moot in light of Defendant's subsequent decision to testify and the declaration's admission as an exhibit at the evidentiary hearing. (*See* Doc. 61.)
[4]   Defendant's Objection also reiterates arguments made in the Motion regarding the elements of his collateral challenge under § 1326(d), which the Court does not reach. (Doc. 46 at 3–8.)

proceedings into question. Defendant repeatedly stated he did not remember many aspects of the proceedings. (*See, e.g.*, Hr'g Tr., Doc. 65 at 17:15–18 ("I don't recall many things."); *id.* at 19:25–20:3 ("I don't recall [whether the IJ explained my right to obtain legal representation]."); *id.* at 20:13–16 ("I don't recall if [the IJ] asked how long I had been [a lawful permanent resident]."); *id.* at 35:15–22 ("I don't remember [applying for voluntary departure]."); *id.* at 38:14–17 ("So do you remember everything that happened at the hearing? A: Not enough, but I do remember a little.").) On redirect, defense counsel asked whether Defendant recalled the Notice of Rights being read to him in Spanish. (*See id.* at 37:19–22.) Defendant answered: "No, I don't recall." (*Id.* at 37:23.) Given the ambiguity in both the question and answer (which is present throughout Defendant's testimony and declaration), the Court asked Defendant to clarify whether he meant (1) he *does not remember if* the officer read him the document, or (2) he *does remember that the officer did not* read the document to him, and provided a lengthy explanation of the distinction. (*Id.* at 37:24–40:2.) Initially, Defendant said, "Honestly, Your Honor, I don't remember," and at the end of the Court's explanation, Defendant said, "I don't remember what happened because it was a long time ago." (*Id.* at 40:3–5.)[5] This testimony suggests that throughout the hearing, when Defendant said he "does not recall" or "does not remember," he was not asserting that some event did not occur, but rather that he simply does not remember whether the event occurred at all. And his lack of memory is understandable given that the hearing occurred 25 years ago.

Defendant's limited memory of the proceedings raises doubts about the veracity of his testimony that he remembers details of what did *not* happen at the hearing. (*See, e.g.*, *id.* at 20:4–9 ("Q: Did the Court explain to you that you could, if you recall, request a continuance to look for legal counsel? A: No. Q: Did the Court offer more time to look for

---

[5] Defense counsel then asked whether the Notice of Rights was *explained* to Defendant in Spanish, and Defendant answered, "No, I don't remember that it was explained to me in Spanish. Otherwise, I would have remembered. I'm 100% sure that it was not explained to me." (*Id.* 40:7–14.) It is unclear what distinction defense counsel was attempting to make between having the document "read" or "explained" to Defendant. But it appears that Defendant either directly contradicted his earlier testimony, or he still did not understand the distinction between asserting an event did not occur and asserting he did not remember whether an event occurred.

a lawyer? A: No."); *id.* at 20:21–21:2 ("[The IJ] didn't mention anything like [cancellation of removal]."); *id.* at 21:7–9 ("Q: After the judge made a decision in your case, do you recall him explaining your appeal rights to you? A: No."). Other pieces of testimony contradict each other. (*Compare, e.g.*, *id.* at 18:14–15 ("Q: And do you recall receiving documents before the hearing? A: No."), *with id.* at 19:16–19 ("Q: And when you were given those documents before the hearing with the list of lawyers, did anybody explain them to you that you can recall? A: No.").)

### D. Analysis

The Court adopts the Magistrate Judge's recommendation to deny Defendant's Motion because, given Defendant's testimony at the evidentiary hearing, he has failed to cure the defects in his declaration and meet his burden to "demonstrate" the elements of § 1326(d). Specifically, Defendant has failed to provide credible evidence that his waiver of appeal rights was invalid, and therefore Defendant cannot show exhaustion of administrative remedies or deprivation of judicial review.

In the § 1326(d) context, "[t]he government bears the burden of proving valid waiver . . . and must prove by clear and convincing evidence that the alien received adequate advisement of the consequences of his waiver of appeal." *Nunez*, 140 F.4th at 1165 (internal quotation marks omitted) (quoting *United States v. De La Mora-Cobian*, 18 F.4th 1141, 1148 (9th Cir. 2021)). Courts must "indulge every reasonable presumption against waiver, and . . . not presume acquiescence in the loss of fundamental rights." *Valdivias-Soto*, 112 F.4th at 723, 725. Defendant acknowledges, however, that before the Government must meet its burden, Defendant must sufficiently allege facts that would indicate his waiver was invalid. (Doc. 65 at 14:3–15:13; Doc. 50 at 2 ("[A]n unrepresented individual in removal proceedings, . . . needs only to contest the validity of the prior removal with *alleged* facts when collaterally attacking the prior removal under § 1326(d).").)[6]

---

[6] After the Court set the evidentiary hearing, the Government filed a Notice explaining its view of the burden of proof in determining a waiver's validity. (*See* Doc. 56.) The

The Court finds Defendant's allegations and subsequent testimony insufficient to invoke the Government's burden to prove a valid waiver by clear and convincing evidence. *See United States v. Lazarevich*, 147 F.3d 1061, 1065 (9th Cir. 1998) (affirming denial of motion to dismiss indictment because defendant failed to meet his "burden of demonstrating a factual basis for his motion"). Defendant relies on: (1) the statement in his declaration that he "do[es] not remember the immigration court or anyone else providing me with an explanation about my right to appeal the removal order," (Doc. 22-4 ¶ 16); and (2) the absence of evidence in the A-file that the IJ advised Defendant of his right to appeal. (Doc. 65 at 15:13–16:8 ("[W]hat we have there is Mr. Blanco-Melgoza saying, 'I don't remember anyone explaining those rights to me.'"). At the evidentiary hearing, Defendant testified that he did not recall the IJ explaining his appeal rights. (*Id.* at 21:7–9 ("Q: After the judge made a decision in your case, do you recall him explaining your appeal rights to you? A: No.").)

On this record, Defendant has failed to raise any credible, affirmative allegations that the IJ failed to advise him of his appeal rights. As discussed above, Defendant's memory of his removal proceedings 25 years ago is not reliable, and the most Defendant can say is that he cannot remember whether he was advised of his appeal rights or not. *See Lazarevich*, 147 F.3d at 1065 ("Finding the evidence in equipoise, the district judge [is] required to rule against [the defendant]."). The Court is mindful that some ambiguities in

Government cited the Magistrate Judge's August 13, 2025 order setting the initial oral argument. (*Id.* (citing Doc. 32 at 5–6).) In that order, the Magistrate Judge cited *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1043 (9th Cir. 2012), which describes a burden-shifting framework where the defendant must rebut official immigration documents that facially indicate a valid waiver with affirmative evidence tending to prove the waiver was invalid. (Doc. 32 at 5–6; Doc. 41 at 3–4.) If the defendant meets that burden, only then must the Government produce additional evidence to establish the waiver's validity. *See Reyes-Bonilla*, 671 F.3d at 1043 (citing *United States v. Galicia-Gonzalez*, 997 F.2d 602, 604 (9th Cir. 1993)). However, that approach applies only where the noncitizen: (1) was represented by counsel at his removal proceeding; and (2) does not allege facts undermining the validity of the waiver. *See United States v. Gomez*, 757 F.3d 885, 894–95 (9th Cir. 2014).

At the evidentiary hearing, the Government argued Defendant had not met his initial burden of challenging the waiver's validity. (Doc. 65 at 10:7–18 ("I don't know if we're even quite there yet, . . . because [the waiver] would have to be challenged in some way. I don't think the declaration on its face is a sufficient challenge because it says that he doesn't know if the [IJ] did X, Y and Z. It's not 'the [IJ] did not give me my rights to appeal; . . . .' It's 'I can't remember.' So I don't know if we even get there.").)

Defendant's testimony may be attributable to the questions asked, including a lack of clarifying follow-up questions, and language differences, i.e., the meaning of some questions being "lost in translation." Nevertheless, in reaching its conclusion, the Court has assessed Defendant's demeanor and credibility in the full context of the proceedings.

In sum, Defendant has not properly alleged, nor provided a factual basis upon which the Court can conclude, that the IJ did not advise him of his appeal rights, and therefore, Defendant has not "demonstrate[d]" that he was improperly deprived of judicial review or that he is excused from his failure to exhaust administrative remedies.

Accordingly,

**IT IS ORDERED:**

1.      The R&R (Doc. 41) is **adopted in part.** For the reasons stated in this Order, the Court accepts and adopts the Magistrate Judge's recommendation that the Court deny Defendant's Motion to Dismiss.

2.      Defendant's Objections to the R&R (Doc. 46) are **overruled.**

3.      Defendant's Motion to Dismiss the Indictment Under 8 U.S.C. § 1326(d) (Doc. 22) is **denied.**

4.      As set forth in the Court's February 4, 2026 Order (Doc. 55), the current trial date is **April 21, 2026,** and the current change of plea deadline is **April 3, 2026.**

Dated this 26th day of March, 2026.

_____
Jennifer G. Zipps
Chief United States District Judge

- 10 -